Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with minor modifications as follows:
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner and in an executed Pre-Trial Agreement as:
 STIPULATIONS
1. All the parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and the subject matter. All the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of parties.
2. At all relevant times herein, there existed between defendant and plaintiff the relationship of employer-employee.
3. Defendant at all relevant times herein was an approved self-insured with the Insurance Company of the State of Pennsylvania acting as administrator.
4. Plaintiff sustained an injury by accident on or about September 23, 1996, while in the course and scope of his employment with defendant.
5. The parties also stipulated at the hearing that plaintiff had been paid compensation for temporary total disability from September 30, 1996 through November 10, 1996, payments of temporary partial disability from November 11, 1996 through January 23, 1997, and payments for temporary total disability from February 17, 1997 through March 12, 1997.
6. The issue for determination is whether plaintiff is entitled to any additional workers' compensation benefits as a result of his admittedly compensable injury by accident?
***********
Based upon the competent evidence of record herein, the Full Commission adopts the Findings of Fact of the Deputy Commissioner with minor modifications and finds as follows:
 FINDINGS OF FACT
1. Plaintiff was forty-years old at the time of hearing before the Deputy Commissioner and had completed the eleventh grade and obtained a GED and an electronic servicing degree. Plaintiff had been working for defendant for less than a month when he sustained a compensable injury by accident.
2. The accident occurred on September 23, 1996. As plaintiff and a co-worker were lifting a television from its box, plaintiff lost his grip on the television and it slipped out of his hands and scraped along the front of his legs, bruising both.
3. Following his injury, plaintiff was sent by defendant to the Hart Industrial Clinic where he was seen and treated by Dr. Eric Hart. Dr. Hart noted that plaintiff had ecchymosis and swelling of his legs. Dr. Hart referred plaintiff to Dr. Charles Kiell. Dr. Kiell hospitalized plaintiff for five days at Frye Regional Medical Center. Thereafter, when plaintiff did not properly respond, Dr. Kiell referred plaintiff to Baptist Hospital where he continued to be hospitalized. While at Baptist Hospital, plaintiff was given blood transfusions to treat the condition that had developed in his legs as a result of the injury. Prior to this injury plaintiff suffered from a bleeding disorder which caused abnormal swelling and bruising.
4. On November 11, 1996, Dr. Eric Hart released plaintiff to return to work four hours per day. Because plaintiff's previous electronic sales job involved climbing ladders, Wal-Mart placed plaintiff in a cashier's position which allowed him to stand or sit on a stool while working. The option to use the stool was within plaintiff's discretion.
5. On November 20, 1996, plaintiff announced that he had claustrophobia and could not work as a cashier. However, the cashier's position was at the front of the store, but the position plaintiff worked in at the time of his injury was within the interior of the store and completely closed in. Plaintiff's workstation was moved to a less confining area. Plaintiff continued to complain and was moved to the lawn and garden center to serve as a gate watcher. From this position, plaintiff could sit or stand in any place so long as he could see the unlocked gate and watch for shoplifters. Plaintiff's complaint that his claustrophobia prevented him from working as a cashier is not accepted as credible.
6. Dr. Hart suspected that plaintiff was suffering from peroneal nerve palsy as a result of his injury. He diagnosed plaintiff's condition as contusion of the leg with foot drop and peroneal nerve pattern with decreased sensation. Dr. Hart referred plaintiff to Dr. C. Michael Nicks.
7. Dr. Nicks initially saw plaintiff on December 17, 1996. Dr. Nicks felt that plaintiff was uncooperative with his examination. He found that plaintiff did not have any tenderness or other symptoms that were isolated to a specific area as he would normally find in these kinds of injures. Instead, he noted that plaintiff was tender wherever he was touched. Normally, he would be able to isolate the symptoms to a specific area of a person's body. Dr. Nicks found plaintiff to have reached maximum medical improvement, released him to return to work without any restrictions and gave him an impairment rating of zero percent (0%) on January 23, 1997. As of January 23, 1997 plaintiff was able to work and earn his pre-injury wages.
8. Thereafter, plaintiff was seen and treated by Dr. Robert L. Liljeberg. Dr. Liljeberg initially saw plaintiff on March 12, 1997. He noted that plaintiff seemed to be in more pain than one would expect from what he saw physically. Plaintiff had limitation of motion initially, no instability, no joint swelling, a small amount of decreased sensation in the outside of the right foot and some other areas of decreased sensation. His motor strength was good. Dr. Liljeberg's initial diagnosis was "pain dysfunctional syndrome versus sympathetic reflex dystrophy." He defined pain dysfunctional syndrome as "somebody has pain for secondary gain and they kind of exacerbate their symptoms to make you think something is wrong."
9. When Dr. Liljeberg saw plaintiff, he was using crutches and a cane. Dr. Liljeberg did not find any objective reasons why plaintiff should have been using either, and he strongly suggested to plaintiff that he stop using the crutches, limit his use of the cane, and try to be as functional and independent as possible.
10. Dr. Liljeberg's final diagnosis was pain dysfunctional syndrome. He found that there were inconsistencies in plaintiff's complaints and his physical findings. It was his opinion that plaintiff could perform the position of cashier or gate watcher that had been offered to him by defendant. Upon determining that plaintiff had reached maximum medical improvement on June 30, 1997, he gave plaintiff a three percent (3%) impairment rating to his right leg. He found that plaintiff had quad atrophy, but was of the opinion that it was the result of plaintiff not using his right leg in a normal fashion rather than a result of his employment-related injury.
11. Plaintiff was next seen by Dr. Maher Habashi for a second opinion on November 6, 1997. In his initial examination, Dr. Habashi found plaintiff to have a tender lumbar spine with a limited range of motion. He did not feel that this was related to any employment-related injury. He also found that plaintiff had five-degree laxity of the medial collateral ligament in his right knee. Additionally, he found that plaintiff had a 20-degree extensor lag of the right knee. Dr. Habashi indicated that the extensor lag would prevent plaintiff from being able to straighten his right leg out all the way using the muscles in his legs, but his leg could be straighten by somebody using their hands. Dr. Habashi also noted that the extensor lag indicated weakness of the main extensor of the knee, which is the quadriceps. It should be noted that Dr. Liljeberg was of the opinion that the atrophy plaintiff suffered in his quadriceps was due to his non-use of his right leg and not from any injury, and he did not find any reason why plaintiff should have been using the crutches or cane, the use of which caused his atrophy.
12. Dr. Habashi was of the opinion that plaintiff suffered an internal derangement of the right knee, and that this condition had not been investigated by MRI. Previously, an MRI was started on plaintiff but was not completed due to plaintiff indicating that he had claustrophobia. Dr. Habashi was of the opinion that plaintiff's condition could be treated with physical therapy to increase his muscle strength in his right leg. Plaintiff had already had physical therapy as a means of treating his condition as found by Drs. Liljeberg and Nicks.
13. Plaintiff's family physician, Dr. Douglas P. Miller, testified that he would defer to the specialist that was treating plaintiff on the matters relating to plaintiff's condition and treatment.
14. Temporary total disability compensation was paid for plaintiff's compensable injury from September 30, 1996 through November 10, 1996. Payments for temporary partial disability were made from November 11, 1996 through January 23, 1997. Payments for temporary total disability resumed covering the period from February 17, 1997 through March 12, 1997, following a complaint from plaintiff that he twisted his knee at work.
15. On March 19, 1997, plaintiff voluntarily missed work without medical authorization. He was not paid for any unauthorized absences.
16. On June 27, 1997, plaintiff quit his full-time job with defendant where he earned wages equal to or greater than his pre-injury wages. He presented a mixture of explanations for quitting his job, including harassment, stomach problems, claustrophobia, and lack of mobility to do his job. Plaintiff worked as a self-employed businessman shortly thereafter.
17. Defendant again offered plaintiff a regular position in October 1997; however, plaintiff did not choose to attempt this position.
18. Dr. Habashi evaluated plaintiff in his office in November 1997. From this one visit, involving manual manipulation only, and without reading any of the diagnostic history on plaintiff's work-related injury, Dr. Habashi gave plaintiff a ten percent (10%) impairment rating for this right leg. Greater weight is given to the opinions of Drs. Nicks and Liljeberg in that they were plaintiff's treating physicians.
19. Plaintiff placed into evidence a list of employers with whom he had sought employment. Plaintiff testified that he was not able to find any other employment, although he had tried. Plaintiff was capable of earning wages equal to or greater than his pre-injury wages with defendant as of the date he voluntarily quit his full-time job on June 27, 1997 and as of the date he reached maximum medical improvement on June 30, 1997. Plaintiff's failure to earn pre-injury wages after June 30, 1997 was not due to his compensable injury.
20. Plaintiff has sustained no permanent partial disability as a result of an employment-related injury and his work-related injury had fully resolved by June 30, 1997.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
1. On September 23, 1996, plaintiff sustained an admitted injury by accident to his legs while in the course and scope of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. As a result of the injury by accident, plaintiff was out of work and temporarily totally disabled from September 30, 1996 through November 10, 1996, and from February 17, 1997 through March 12, 1997. He was temporarily partially disabled from November 11, 1996 through January 23, 1997. He has been paid all disability compensation owed to him from the time of the injury through the present.
3. Plaintiff voluntarily quit his job with Wal-Mart Stores, Inc., June 27, 1997. At the time plaintiff quit working, he was capable of earning pre-injury wages. Plaintiff reached maximum medical improvement on June 30, 1997 and has no permanent partial disability as a result of his injury. Any complaints of stomach problems, anxiety, and claustrophobia plaintiff has had before or since June 30, 1997 can not be attributed to his September 23, 1996 compensable injury to his leg.
4. Plaintiff is not in need of further medical treatment for his compensable injury.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for additional workers' compensation benefits and medical compensation is hereby DENIED.
2. Each party shall bear its own costs.
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER